IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| XAVIER HAWKINS,<br><br>*Plaintiff*,<br><br>vs.<br><br>AMAZON.COM, INC.; AMAZON LOGISTICS, INC., and AMAZON WEB SERVICES, INC.<br><br>*Defendants*. | Civil Action No. _____<br><br>**COMPLAINT and<br>DEMAND FOR JURY TRIAL** |

# COMPLAINT

Plaintiff Xavier Hawkins ("Plaintiff" or "Mr. Hawkins"), by and through his undersigned counsel, hereby files this Complaint against Defendants Amazon.com, Inc., Amazon Logistics, Inc., and Amazon Web Services, Inc. (collectively, "Defendants" or "Amazon") alleging as follows:

## NATURE OF THE ACTION

1. This is a complaint for employment discrimination and retaliation brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, as amended ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.*, as amended ("FMLA").

## PARTIES

2.     Plaintiff Xavier Hawkins is a Black man and a citizen of the State of Georgia. When the events gave rise to this action, Plaintiff was employed by Amazon in Stone Mountain, DeKalb County, Georgia.

3.     Defendant Amazon.com, Inc., is a corporate entity based in the State of Washington. Amazon.com, Inc. is an employer under Title VII. At all times pertinent hereto, Defendant Amazon.com, Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

4.     Defendant Amazon Logistics, Inc. is a corporate entity based in the State of Washington. Defendant Amazon Logistics, Inc. is an employer under Title VII. At all times pertinent hereto, Defendant Amazon Logistics Inc. has engaged in an industry affecting commerce and has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

5.     Defendant Amazon Web Delivery Services, LLC is a corporate entity based in the State of Washington. Defendant Amazon Web Delivery Services, LLC is an employer under Title VII. At all times pertinent hereto, Defendant Amazon Web Delivery Services, LLC has engaged in an industry affecting commerce and

has had fifteen (15) or more employees for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 because the action arises under the laws of the United States, specifically, Title VII, Section 1981, and the FMLA. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1343.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in DeKalb County, Georgia, which is situated within this judicial district.

8. Plaintiff has met administrative prerequisites to maintaining his Title VII claim in that he timely filed a charge of unlawful race discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 410-2022-03497 (Exhibit 1). EEOC issued a Determination and Notice of Rights on June 16, 2022 (Exhibit 2), which was subsequently received by Plaintiff. The current action has been timely filed. [1]

---

[1] Mr. Hawkins intends to timely file another EEOC Charge relating to events that occurred after the filing of his first Charge. Once he has exhausted administrative remedies, he will seek leave to add allegations to his complaint regarding further exhaustion. Of course, Plaintiff may presently bring all of his race discrimination

3

## FACTS

9. On or around October 13, 2021, Plaintiff transferred from a different Amazon location to Amazon's Stone Mountain, Georgia, sorting facility (the "Facility") as an Area Manager.

10. On or around December 5, 2021, Amazon Level 7 Vice President Maciej Curlej ("Curlej"), a White man, visited the Facility.

11. While returning from work, Mr. Hawkins noticed Curlej staring at him.

12. Curlej questioned Mr. Hawkins about Mr. Hawkins's area data.

13. Mr. Hawkins's radio feedback interrupted Curlej. Curlej then aggressively advanced upon Mr. Hawkins, slapping him across the chest as Curlej snatched Mr. Hawkins's radio from his chest.

14. The same day, Mr. Hawkins complained to Amazon Human Resources Representatives Sterling Wine ("Wine"), and Christian Reed ("Reed"), that Curlej had physically assaulted him and had engaged in microaggressions towards him because he is Black.

15. Wine informed Mr. Hawkins that Curlej was a Level 7 Vice President, insinuating nothing could be done because of his high-level role.

---

and retaliation claims pursuant to Section 1981, without further exhaustion of administrative remedies.

16. On or around December 12, 2021, Mr. Hawkins further complained to the Amazon Employee Resource Center ("ERC").

17. On or around December 15, 2021, Mr. Hawkins met with Fairwell Meritt ("Meritt"), and asked whether security footage from December 5, 2021, had been reviewed. Mr. Hawkins learned from Meritt that Amazon did not capture footage of the incident involving Curlej.

18. On or around December 15, 2021, Mr. Hawkins received a call from Amazon Corporate Investigator Alex Winton ("Winton") in response to his December 12, 2021 ERC complaint. Winton interviewed Mr. Hawkins in response to the complaint that Curlej displayed microaggressions and racist conduct towards him because of his race.

19. Because of the emotional distress Mr. Hawkins was suffering due to the assault and Amazon's handling of his complaints, he requested leave under the FMLA.

20. Amazon approved Mr. Hawkins's FMLA leave request on or around December 16, 2021.  Mr. Hawkins took FMLA leave from on or around December 16, 2021, until on or around February 17, 2022.

21. On or around December 23, 2021, while he was still on FMLA leave, Mr. Hawkins received an email from Winton regarding the results of his

investigation. Winton had concluded that Amazon's handling of the December 5, 2021 incident involving Curlej violated Amazon's policies.

22. After exhausting FMLA leave, Mr. Hawkins was still experiencing symptoms relating to the assault and workplace discrimination. Accordingly, he was approved for and took a personal leave of absence from on or around February 18, 2022, until on or around March 15, 2022.

23. Mr. Hawkins returned to work on or around March 15, 2022.

24. Upon his return to work, Amazon gave Mr. Hawkins negative performance reviews and engaged in other retaliatory conduct.

25. Prior to engage in protected activity, including complaining of discrimination and taking protected leave, Plaintiff was meeting all of Defendants legitimate performance expectations, in that Plaintiff had never been placed on a performance improvement plan or reprimanded or disciplined based on performance.

26. Upon returning from leave, Mr. Hawkins met with Manager Chris Williams ("Williams") who informed Mr. Hawkins that she has to "document everything that he does now because he knows the system," or words to that effect.

27. On or around March 21, 2022, Williams disciplined Mr. Hawkins for an alleged joint safety issue that occurred on or around February 26, 2022, during a

site shutdown. The written discipline stated that all Area Managers were responsible for holding process assistants and associates accountable for cleaning their areas during the site shutdown on February 26, 2022, and that Mr. Hawkins did not meet this expectation.

28.  On information and belief, Mr. Hawkins was the only Area Manager who received a write-up related to the February 26, 2022, site shutdown.

29.  Curiously, Mr. Hawkins had still been on leave during the February 26, 2022 site shutdown upon which the discipline was based.

30.  Curiously, White Area Managers and those who did not take protected FMLA leave, including Alesia, a White woman, *who was actually on-site* during the February 26, 2022 site shutdown, did not receive a similar write-up.

31.  In or around May 2022, Williams rated Mr. Hawkins as "least effective," the lowest possible performance rating, on a performance evaluation.

32.  Mr. Hawkins was appalled by Williams's review because (1) he was never placed within a performance improvement plan, and (2) he was never reprimanded for a performance failure. Indeed, Mr. Hawkins had always performed well and had not received any negative feedback prior to engaging in protected activity in the form of complaining of race discrimination and taking protected FMLA leave.

33. Mr. Hawkins complained to Williams that the review did not reflect his performance. Williams responded, "Don't f*** with me! I have enough on you to put you on a performance review plan," or words to that effect.

34. Williams placed Mr. Hawkins on a performance review plan the following week. This was a setup to terminate Mr. Hawkins's employment, since he would be subject to termination if Amazon determined he did not meet the requirements of the performance improvement plan.

35. Williams also falsified one of Mr. Hawkins's past performance evaluations when she lowered Mr. Hawkins's performance rating to "least effective."

36. On or around May 20, 2022, Mr. Hawkins requested a hardship transfer through Human Resources Representative Carey Drew ("Drew"). For approval, an employee need only (1) experience a personal hardship, and (2) select a vacant position of the same level as the employee. Mr. Hawking met both of these requirements, yet Amazon denied Mr. Hawkins's request.

37. Mr. Hawkins filed his EEOC Charge on or around June 14, 2022.[2]

38. On or around July 12, 2022, Mr. Hawkins was physically assaulted by an Amazon employee, Eric Taylor. After Mr. Hawkins reported the incident,

---

[2] *See supra* n. 1.

8

Amazon waited to suspend Taylor, while it should have suspended him immediately pursuant to Amazon's policies.

39. On or around July 13, 2022, Mr. Hawkins again requested a hardship transfer through Drew. Mr. Hawkins, identifying more than ten facilities to which he requested transfer.

40. Amazon did not approve the requested hardship transfer.

41. On or around August 17, 2022, Mr. Hawkins messaged Drew and Reed, inquiring about the status of his hardship requests made on or around May 20, 2022, and July 13, 2022.

42. Drew instructed Mr. Hawkins to come to the Facility for a meeting.

43. On or around August 18, 2022, Mr. Hawkins met with Drew and Operations Manager Tre Hudson ("Hudson").

44. Hudson accused Mr. Hawkins of time theft for FMLA leave he had taken on or around December 14, 2021, until in or around February 2022.

45. Hudson and Drew told Mr. Hawkins that Amazon would fire him immediately unless he resigned, allowing Mr. Hawkins only 30 minutes to decide and draft a resignation letter.

46. Mr. Hawkins resigned under threat of immediate termination, believing that having a termination on his record would affect his future career options.

47. Hudson and Drew instructed Mr. Hawkins to draft an email confirming his resignation in their presence and would not allow him to leave the Facility until Drew received the email.

48. Under threat, Mr. Hawkins sent the email to Drew as instructed, and Hudson escorted Mr. Hawkins out of the building.

49. However, on or about September 13, 2022, Mr. Hawkins received a termination letter from Amazon by email.

50. The letter states that Mr. Hawkins was terminated on August 18, 2022, and orders Mr. Hawkins to repay $2,523.95 to Amazon.[3]

### CAUSES OF ACTION

### COUNT I
**42 U.S.C. §§ 2000e,** *et seq.*
**[Title VII– Race Discrimination]**

51. Plaintiff adopts by reference and incorporates paragraphs 1 through 50 as if fully set forth herein.

52. Plaintiff was, at all times relevant hereto, employed by Defendant(s).

---

[3] The requested repayment amount apparently represents relocation expenses paid by Amazon. However, Mr. Hawkins should not be required to repay those expenses, given that he was discriminatorily terminated or constructively terminated based on his race, and because he engaged in protected activity.

10

53. As an employer within the meaning of Title VII, Defendants owed at all times a duty to Plaintiff not to discriminate against him with respect to employment or other conditions or privileges of employment due to his race.

54. Plaintiff is a Black man.

55. At all relevant times, Plaintiff met Defendants' legitimate performance expectations.

56. Defendants discriminated against Plaintiff by subjecting him to a hostile work environment based on his race and by subjecting him to adverse actions based on his race.

57. Similarly situated employees outside Plaintiff's protected category were treated more favorable in that they were not subjected to a hostile work environment and were not subjected to adverse actions based on race.

58. Defendants' conduct had the purpose and effect of substantially interfering with the Plaintiff's employment and created an intimidating, hostile, and offensive employment environment.

59. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

60. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his employability and earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT II

**42 U.S.C. §§ 2000e, *et seq*.**
**[Title VII - Retaliation]** [4]

61. Plaintiff adopts by reference and incorporates paragraphs 1 through 50 as if fully set forth herein.

62. Plaintiff engaged in protected activity under Title VII when he complained of race discrimination and filed an EEOC charge.

63. Defendants retaliated against Plaintiff after he engaged in protected activity, subjecting him to adverse actions, including undue performance management, denying his transfer requests, and terminating or constructively discharging him.

---

[4] *See supra*, n. 1

64. There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

65. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

66. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his employability and earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT III

**42 U.S.C. § 1981**
**[Race Discrimination]**

67. Paragraphs 1 through 50 are incorporated herein as if set forth in full.

68. As set forth above, Defendants treated Plaintiff disparately from other employees based on race and created a racially-hostile work environment that violated Plaintiff's federally protected rights.

69. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

70. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his employability and earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT IV
## 42 U.S.C. § 1981
### [Retaliation]

71. Paragraphs 1 through 50 are incorporated herein as if set forth in full.

72. Plaintiff engaged in protected activity when he complained of race discrimination and filed an EEOC charge.

73. Defendants retaliated against Plaintiff after he engaged in protected activity, subjecting him to adverse actions, including undue performance management, denying his transfer requests, and terminating or constructively discharging him.

74. There was a causal connection between Plaintiff's protected activity and the adverse actions to which he was subjected.

75. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

76. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his employability and earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## COUNT IV
### 29 U.S.C. §§ 2601, *et seq*.,
### [FMLA – Retaliation]

77. Paragraphs 1 through 50 are incorporated herein as if set forth in full.

78. Plaintiff exercised rights protected under the FMLA when he requested and took FMLA leave.

79. Plaintiff was qualified for his position.

80. Plaintiff suffered adverse employment actions including undue performance management, denying his transfer requests, and terminating or constructively discharging him.

81. There is a causal connection between Plaintiff's protected activity and the adverse employment actions to which Defendant subjected him.

82. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights, Plaintiff has lost and will continue to lose substantial income and other employment benefits.

83. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, anxiety, harm to his employability and earning capacity, damage to his reputation, and disruption of his personal life.

WHEREFORE, premises considered, Plaintiff demands judgment against the Defendants in an amount greater than the minimum jurisdictional limits of this Court for damages, costs, and such other and proper relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter an Order which will:

A. Declare the conduct engaged in by the Defendants to be in violation of Plaintiff's rights under federal law;

B.   Declare that Plaintiff is entitled to his prior employment, and reinstate him to his position;

C.   Award Plaintiff compensatory damages against the Defendants;

D.   Award Plaintiff punitive damages against the Defendants;

E.   Award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law;

F.   Award Plaintiff his reasonably costs and attorneys' fees;

G.   Award Plaintiff such other and further relief, including equitable relief, that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all counts and claims triable by jury as raised by this Complaint.

This 14th day of September, 2022.

(signatures on following page)

Respectfully submitted,

**CONLEY GRIGGS PARTIN, LLP**

BY: /s/ *Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
RANSE M. PARTIN
Georgia Bar No. 556260
4200 Northside Pkwy NW Bldg One
Suite 300
Atlanta, GA 30327
(404) 467-1155
cale@conleygriggs.com
ranse@conleygriggs.com

*Attorneys for Plaintiff*